UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
CHARLES D. AUSTIN
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7810
MDD_CDAChambers@mdd.uscourts.gov

July 30, 2025

LETTER TO ALL COUNSEL OF RECORD

Re:   *Stacy S. v. Frank Bisignano, Commissioner, Social Security Administration*[1]
      Civil No. 24-2613-CDA

Dear Counsel:

On September 10, 2024, Plaintiff Stacy S. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny Plaintiff's claim for Social Security benefits. ECF 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2023). I have considered the record in this case (ECF 7) and the parties' filings[2] (ECFs 8, 10). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). The Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will DENY Plaintiff's motion for summary judgment, DENY Plaintiff's alternative motion for remand, and AFFIRM the Commissioner's decision. This letter explains why.

I.   **PROCEDURAL BACKGROUND**

Plaintiff filed a Title II application for Disability Insurance Benefits ("DIB") on September 4, 2020, alleging a disability onset of June 6, 2019. Tr. 197-98. Plaintiff's claims were denied initially and on reconsideration. Tr. 97-107. On February 4, 2022, an Administrative Law Judge ("ALJ") held a hearing. Tr. 9-31. Following the hearing, on March 2, 2022, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[3] during the relevant time frame. Tr. 71-87. The Appeals Council denied Plaintiff's request for review. Tr. 1-3. On

---

[1] Plaintiff filed this case against Martin O'Malley, the Commissioner of Social Security on September 10, 2024. ECF 1. Frank Bisignano became the Commissioner of Social Security on May 7, 2025. Accordingly, Commissioner Bisignano has been substituted as this case's Defendant pursuant to Federal Rule of Civil Procedure 25(d). *See* Fed. R. Civ. P. 25(d).

[2] Standing Order 2022-04 amended the Court's procedures regarding SSA appeals to comply with the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g), which became effective December 1, 2022. Under the Standing Order, parties now file dispositive "briefs" rather than "motions for summary judgment." Here, Plaintiff filed a motion for summary judgment, or in the alternative, a motion for remand. *See* ECF 8.

[3] 42 U.S.C. §§ 301 et seq.

*Stacy S. v. Bisignano*
Civil No. 24-2613-CDA
July 30, 2025
Page 2

August 10, 2023, pursuant to the parties' consent, this Court remanded Plaintiff's case to the Commissioner for further consideration. Tr. 1299-1304. On May 16, 2024, the ALJ held a second hearing. Tr. 1268-92. Following the hearing, on June 21, 2024, the ALJ determined that Plaintiff was not disabled for the second time. Tr. 1311-25. The second ALJ's decision constitutes the final, reviewable decision of the SSA. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

## II.   THE ALJ'S DECISION

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [their] past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

At step one, the ALJ determined that Plaintiff "did not engage in substantial gainful activity during the period from her alleged onset date of June 6, 2019 through her date last insured of September 30, 2020." Tr. 1316. At step two, the ALJ found that Plaintiff suffered from the severe impairments of "migraines, degenerative disc disease, myofascial pain syndrome, obesity, sensorineural hearing loss, posttraumatic stress disorder (PTSD), major depressive disorder (MDD), generalized anxiety disorder (GAD), bipolar II disorder, schizoaffective disorder, and neurocognitive disorder." Tr. 1316. The ALJ also found Plaintiff's osteoarthritis in her knees and hips to be a non-medically determinable impairment. Tr. 1317. At step three, the ALJ determined that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 1317. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) except that she was limited to frequent climbing of ramps, stairs, ladders, ropes, or scaffolds, balancing, stooping, kneeling, crouching, or crawling. The claimant was limited to frequent exposure to loud noise and vibration, and to frequent use of moving mechanical parts and exposure to unprotected heights. The claimant was limited to performing simple and repetitive tasks in a routine work setting, performed in a work environment with no assembly-line work or work that requires hourly quotas, involving only simple work-related decisions and infrequent and gradual workplace changes. She was further limited to occasional interaction with coworkers, supervisors, and the public.

Tr. 1319. The ALJ determined that Plaintiff was unable to perform past relevant work as a certified nursing assistant (DOT[4] #355.674-014) but could perform other jobs that existed in significant numbers in the national economy. Tr. 1323-24. Therefore, the ALJ concluded that Plaintiff was not disabled. Tr. 1325.

### III. LEGAL STANDARD

The scope of the Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla . . . and somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

### IV. ANALYSIS

Plaintiff raises two arguments on appeal: (1) the ALJ's RFC assessment conflicts with the opinion of Dr. Milan and (2) that the ALJ improperly discounted Plaintiff's mental limitations based on the absence of objective evidence. ECF 8-1, at 8-14. Defendant counters that the ALJ properly evaluated the prior administrative medical findings and properly determined Plaintiff's RFC, and the ALJ properly evaluated Plaintiff's subjective symptoms. ECF 10, at 6-13.

A. The ALJ properly evaluated Plaintiff's RFC.

A claimant's RFC is "the most [the claimant] can still do despite [the claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a). In assessing RFC, an ALJ must "consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work.'" *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (quoting *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)). "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence[.]" Social Security

---

[4] The "DOT" is the Dictionary of Occupational Titles. "The *Dictionary of Occupational Titles*, and its companion, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* . . . , are [SSA] resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations. U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991); U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993)." *Pearson v. Colvin*, 810 F.3d 204, 211 n.1 (4th Cir. 2015).

*Stacy S. v. Bisignano*
Civil No. 24-2613-CDA
July 30, 2025
Page 4

Ruling ("SSR") 96-8p, 1996 WL 374184, at *7 (S.S.A. July 2, 1996). In cases that reach step five of the sequential evaluation process, an ALJ must pose hypothetical questions to a vocational expert to determine whether the claimant's RFC precludes the claimant from performing jobs existing in substantial numbers in the national economy. *See Johnson v. Barnhart*, 434 F.3d 650, 659 (4th Cir. 2005).

When a claimant possesses a mental impairment, an ALJ is required to make "'a specific finding as to the degree of limitation in each of' the four areas of functional limitation listed in [20 C.F.R.] § 404.1520a(c)(3)." *Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 659 (4th Cir. 2017) (quoting 20 C.F.R. § 404.1520a(e)(4)). One of these four areas, maintaining concentration, persistence, and pace ("CPP"), concerns "the abilit[y] to focus attention on activities and stay on task age-appropriately." 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(E)(3). A "moderate" limitation in CPP means that a claimant's ability to sustain CPP "independently, appropriately, effectively, and on a sustained basis is fair." *Id.* § 12.00(F)(2)(c).

Specific to a limitation in the functional area of CPP, an ALJ must then expressly account for such limitation, or explain why no limitation exists, in the function-by-function analysis. *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015); *Shinaberry v. Saul*, 952 F.3d 113, 121 (4th Cir. 2020). An ALJ may not account for a claimant's moderate CPP limitations by restricting the RFC to simple, routine tasks or unskilled work without explaining why such provisions adequately address the claimant's CPP limitations. *See Mascio*, 780 F.3d at 638; *Shinaberry*, 952 F.3d at 121–22. However, an ALJ may accommodate a claimant's moderate CPP limitations by assigning persuasive value to a medical opinion that "provide[s] substantial support for" the ALJ's CPP-related RFC provisions. *Sizemore v. Berryhill*, 878 F.3d 72, 81 (4th Cir. 2017). In other words, where an ALJ finds that a "plaintiff [i]s moderately limited in CPP, the ALJ must account for those limitations in the RFC or explain how [the] plaintiff could maintain CPP while performing simple, routine tasks." *Everlena G. v. Kijakazi*, No. DLB-20-0784, 2021 WL 3912277, at *3 (D. Md. Sept. 1, 2021).

The ALJ assigned persuasive value to Dr. Milan's opinion with respect to Plaintiff's mental limitations. *See* Tr. 1323. Dr. Milan opined that Plaintiff's "ability to maintain attention and concentration for extended periods"; "ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances"; "ability to work in coordination with or in proximity to others without being distracted by them"; "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods"; "ability to accept instructions and respond appropriately to criticism from supervisors"; and "ability to sustain an ordinary routine without special supervision" were moderately limited. Tr. 46-47. The ALJ found Dr. Milan's opinion generally persuasive, concluding that "Dr. Milan's findings are supported by the evidence cited in his determination, including records from [Plaintiff's] neuropsychological evaluations with Dr. Gilstein, and they are consistent with the treatment records from the period prior to the date last insured, which describe symptoms of paranoia and suicidal ideations but generally normal mental status examinations and good response to conservative treatment[.]" Tr. 1323.

*Stacy S. v. Bisignano*
Civil No. 24-2613-CDA
July 30, 2025
Page 5

Plaintiff argues that the ALJ, despite finding Dr. Milan's opinion generally persuasive, "failed to explain why certain portions of this opinion pertaining to time off task, absenteeism, and ability to sustain an ordinary routine without special supervision were rejected" and that the "ALJ did not address time off task in his RFC assessment." ECF 8-1, at 8-10. The Commissioner argues that Dr. Milan's explanatory texts imposed no limitations for off-task time or absences beyond normal breaks, which are consistent with the ALJ's decision. ECF 10, at 7. As the Commissioner posits, Dr. Milan also opined that Plaintiff "[w]ould be able to maintain attention/concentration during the day with normal breaks" and "[w]ould be able to persist at simple tasks for two hour blocks to complete normal workday/workweek." *Id.* (citing Tr. 47). The Court finds Plaintiff's argument unavailing.

"The RFC determination is an issue ultimately reserved for the ALJ." *Geraldine S. v. Comm'r, Soc. Sec. Admin.*, No. SAG-18-3447, 2019 WL 3935376, at *1 (D. Md. Aug. 20, 2019). An ALJ's RFC determination must be based "on all of the relevant medical and other evidence." 20 C.F.R. § 416.945(a)(3). Although the ALJ did not replicate Dr. Milan's opinion verbatim in crafting the RFC, such a discrepancy does not warrant remand. *See Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015) ("Even where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a [source's] opinions verbatim; nor is the ALJ required to adopt the [source's] limitations wholesale."); *Wilkinson v. Comm'r of Soc. Sec.*, 558 F. App'x 254, 256 (3d Cir. 2014) ("[N]o rule or regulation compels an ALJ to incorporate into an RFC every finding made by a medical source simply because the ALJ gives the source's opinion as a whole 'significant' weight.").

At step three, the ALJ found that Plaintiff had a moderate CPP limitation. Tr. 1318. The ALJ acknowledged that Plaintiff "alleged that she had a short attention span and did not immediately finish things that she started." Tr. 1318. The ALJ noted, however, that "at examinations with treating healthcare providers during the period between the alleged onset date and the date last insured, [Plaintiff] exhibited good concentration." Tr. 1318. In assessing Plaintiff's RFC, the ALJ ultimately concluded that Plaintiff "was limited to performing simple and repetitive tasks in a routine work setting, performed in a work environment with no assembly-line work or work that requires hourly quotas, involving only simple work-related decisions and infrequent and gradual workplace changes." Tr. 1319. The ALJ found that Plaintiff's moderate CPP limitation "can be expected to have prevented her from performing assembly-line work or work requiring hourly quotas."[5] Tr. 1322.

---

[5] The ALJ also found Dr. Gilstein's limitations that Plaintiff "would require extra time to finish tasks, would need to take breaks when she feels 'cognitively fatigued,' would need to write information down as much as possible due to deficits in memory, and would need to learn to use routines" as "less than fully persuasive." Tr. 1322. The ALJ found that "[w]hile these opinions have some support in Dr. Gilstein's examinations of [Plaintiff], in which testing showed low-average intellectual functioning, Dr. Gilstein's opinions are inconsistent with the overall medical evidence from prior to the date last insured, which describe largely normal mental status examination[s] and good response to conservative treatment despite some symptoms of paranoia and suicidal ideations[.]" Tr. 1322.

Stacy S. v. Bisignano
Civil No. 24-2613-CDA
July 30, 2025
Page 6

With respect to interacting with others, the ALJ found that Plaintiff had a moderate limitation. Tr. 1318. The ALJ observed that Plaintiff "alleged that she had problems getting along with others because she would 'snap' at them, but she acknowledged that she spent time with others regularly." Tr. 1318. The ALJ acknowledged that Plaintiff said "she suffered from paranoid delusions about other people, such as believing that she was being stalked and that her boss was putting her in danger, and that her paranoia caused her to physically attack her husband in January 2020." Tr. 1318. The ALJ noted, however, that "at examinations with treating healthcare providers . . . [Plaintiff] appeared cooperative and engaged with appropriate behavior and normal speech." Tr. 1318. In assessing Plaintiff's RFC, the ALJ limited Plaintiff "to occasional interaction with coworkers, supervisors, and the public." Tr. 1319. The ALJ concluded that Plaintiff's moderate limitation in interacting with others "can be expected to have restricted her to occasional interaction with coworkers, supervisors, and the public." Tr. 1322.

Plaintiff disagrees with how the ALJ considered the evidence related to Plaintiff's time off-task, absenteeism, and ability to sustain an ordinary routine without special supervision. Notably, however, Plaintiff does not argue that the production-rate provision in the RFC fails to accommodate her moderate CPP limitation.[6] Instead, Plaintiff points to the exact evidence that the ALJ discussed in contemplating their narrative regarding her mental impairments. To be sure, an ALJ need not discuss every piece of evidence of record or follow a particular format in conducting their analysis. *See Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) ("there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision"). Here, Plaintiff disagrees with the ALJ's conclusions, which are supported by substantial evidence. Whether I could or would have found differently than the ALJ is of no moment. This Court "does not reweigh evidence . . . in evaluating whether a decision is supported by substantial evidence; '[w]here conflicting evidence allows reasonable minds to differ,' [I] defer

---

[6] The Court has previously held in some circumstances that a production-rate pace restriction adequately accounts for a claimant's moderate CPP limitation. *See, e.g.*, *Teresa B. v. Comm'r, Soc. Sec. Admin.*, No. SAG-18-2280, 2019 WL 2503502, at *2 (D. Md. June 17, 2019) (holding that an RFC provision limiting a claimant to "no work requiring a high-quota production-rate pace (i.e., rapid assembly line work where co-workers are side-by-side and the work of one affects the work of the other)" was sufficient to address a moderate CPP limitation); *Kenneth L. v. Kijakazi*, No. SAG-20-624, 2021 WL 4198408, at *2 (D. Md. Sept. 15, 2021) (holding that a limitation to "no strict production quotas" was sufficient to address moderate CPP limitations); *Lori S. v. Kijakazi*, No. BAH-21-2034, 2022 WL 1721192, at *3 (D. Md. May 27, 2022) (holding that the ALJ accounts for Plaintiff's moderate CPP limitations when limiting Plaintiff to "no production rate or pace work[,] [t]hat is no assembly line or high production quota[.]"). Additionally, our sister court has held that where an ALJ "finds moderate limitation in CPP" and "has included a . . . restriction to 'non-production oriented' work, *Mascio* does not require further explanation by the ALJ, at least absent some evidentiary showing by the claimant . . . that he or she cannot perform even non-production-type work because of his or her particular CPP deficits." *Grant v. Colvin*, No. 15-0515, 2016 WL 4007606, at *9 (M.D.N.C. July 26, 2016), *recommendation adopted*, slip op. (M.D.N.C. Sept. 21, 2016).

to the Commissioner's decision." *Fiske v. Astrue*, 476 F. App'x 526, 527 (4th Cir. 2012) (quoting *Johnson*, 434 F.3d at 653).

Moreover, an ALJ does not err by failing to include the vocational expert's ("VE's") testimony regarding off-task time and absenteeism. "It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact." *David R. v. Comm'r of Soc. Sec.*, No. 22-0088, 2022 WL 17362156, at *7 (S.D. Ohio Nov. 30, 2022) (quoting *Winslow v. Comm'r of Soc. Sec.*, 566 F. App'x 418, 421-22 (6th Cir. 2014)); *see Michael O. v. Kijakazi*, No. BAH-22-2287, 2023 WL 4533318, at *7 (D. Md. July 13, 2023) (holding that an ALJ does not err when excluding off-task percentage or absenteeism contemplated by a VE). Even though the ALJ contemplated Plaintiff's absences, a VE's testimony about absenteeism is "not required to be incorporated into the RFC" because such testimony "is a statement of the vocational expert's general observation and experience and does not pertain to [the claimant's] specific functioning." *Vicki M. o/b/o Monte H. v. Comm'r of Soc. Sec.*, No. MKD-17-0437, 2019 WL 438480, at *8 (E.D. Wash. Feb. 4, 2019) (citing 20 C.F.R. § 404.1545(a)(4)). As such, the ALJ did not err by failing to incorporate the VE's testimony regarding off-task time and absenteeism into the RFC.

B. The ALJ properly evaluated Plaintiff's subjective complaints.

Also, the Court finds that the ALJ properly accounted for Plaintiff's subjective complaints as to Plaintiff's mental limitations. When evaluating subjective complaints, ALJs use the two-step analytical process set forth at 20 C.F.R. §§ 404.1529 and 416.929 and described in SSR 16-3p. *See Oakes v. Kijakazi*, 70 F.4th 207, 215 (4th Cir. 2023) (citing *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 95 (4th Cir. 2020)). Step one requires an ALJ to determine if a "medically determinable impairment" exists that could "reasonably be expected to produce the claimant's alleged symptoms."[7] *Id.* (quoting *Arakas*, 983 F.3d at 95). At step two, the ALJ assesses "the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work and whether the claimant is disabled." *Id.* (quoting *Arakas*, 983 F.3d at 95). Because "disability benefits can be awarded on the sole basis of an objective impairment and derivative subjective pain," a claimant may "rely exclusively on subjective evidence" at step two. *Id.* (quoting *Arakas*, 983 F.3d at 96). Thus, "an ALJ applies the incorrect legal standard in discrediting complaints 'based on [a] lack of objective evidence corroborating them.'"[8] *Id.* (quoting *Arakas*, 983 F.3d at 96) (brackets in original); *accord* SSR 16-3p, 2017 WL 5180304, at *5 ("[W]e will not disregard an individual's statements about [their] symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms

---

[7] A "symptom" is a claimant's "own description or statement of [their] physical or mental impairment(s)." SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017).

[8] "Objective medical evidence is evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques, such as evidence of reduced joint motion, muscle spasm, sensory deficit or motor disruption." 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).

alleged by the individual.").

While an ALJ may not dismiss subjective complaints "based *entirely* upon the belief that they were not corroborated by the record's medical evidence," the ALJ must still "ascertain the extent of the claimant's alleged functional limitations and restrictions due to their pain or symptoms that could be reasonably accepted as consistent with the medical signs, laboratory findings, and other evidence, in discovering how these symptoms impact the claimant's ability to work." *Shelley C. v. Comm'r of Soc. Sec. Admin.*, 61 F.4th 341, 360 (4th Cir. 2023) (citing *Craig*, 76 F.3d at 594) (italics in original). In this respect, SSR 16-3p recognizes that "objective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms[.]" SSR 16-3p, 2017 WL 5180304, at *5. Therefore, an ALJ "must consider whether an individual's statements about the intensity, persistence, and limiting effects of [their] symptoms are consistent with the medical signs and laboratory findings of record." *Id.* To do this, an ALJ considers "all of the evidence" in a claimant's record. *Id.* at *2, *7.

Regarding Plaintiff's mental impairments, at step one, the ALJ found Plaintiff to suffer from the severe impairments of posttraumatic stress disorder (PTSD), major depressive disorder (MDD), generalized anxiety disorder (GAD), bipolar II disorder, schizoaffective disorder, and neurocognitive disorder. Tr. 1316. The ALJ determined that Plaintiff's impairments did in fact cause limitations. However, the ALJ continued, Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 1320.

The ALJ comported with 20 C.F.R. § 404.1529 and *Arakas*, as they did not require Plaintiff to produce "objective evidence" to corroborate subjective complaints of her pain. *Arakas*, 938 F.3d at 96. The ALJ compared Plaintiff's complaints of significant mental health symptoms to her objective evidence: at examinations, Plaintiff appeared cooperative; engaged; and exhibited appropriate behavior, intact recall, good concentration, and normal speech; "the medical evidence of record . . . describes largely normal mental status examination and good response to conservative treatment despite some symptoms of paranoia and suicidal ideations"; and treatment records "describe symptoms of paranoia and suicidal ideations but generally normal mental status examinations and good response to conservative treatment[.]" Tr. 1321-23. The ALJ also considered that Plaintiff "performed grocery shopping, cooking, laundry, and house cleaning with her husband." Tr. 1320. Contrary to Plaintiff's assertions otherwise, the ALJ acknowledged Plaintiff's fluctuations in mood. *See* Tr. 1321 (In March and April 2019, Plaintiff "reported that she was doing well overall"; in June 2019, Plaintiff "reported that she was struggling with feeling safe and felt that her neighbors were harming her"; in August 2019, Plaintiff "reported that she was feeling fearful and angry due to her PTSD being triggered"; in November 2019, Plaintiff "visited the emergency room with suicidal ideations"); *see id.* (In March 2020, Plaintiff "reported that she had stopped taking her psychiatric medications years ago and had been declining, and that she did not feel stable enough to return to work" and in May 2020, Plaintiff "expressed gratitude that her psychiatric medications had helped her achieve improvement in her mental health").

*Stacy S. v. Bisignano*
Civil No. 24-2613-CDA
July 30, 2025
Page 9

A careful reading of this analysis reveals that the ALJ weighed Plaintiff's subjective complaints against other record evidence in a manner permissible under *Shelley C.* and *Arakas*. *See Audlica D.*, 2023 WL 1769665, at *3 (finding the ALJ's analysis consistent with *Arakas* where it considered claimant's qualifying statements about pain and other evidence documenting improvement in symptoms); *Lasharne W. v. Comm'r, Soc. Sec. Admin.*, No. SAG-21-2603, 2023 WL 2414497, at *4 (D. Md. Mar. 8, 2023) ("This case is otherwise distinguishable from *Shelley C.*, where the ALJ improperly ignored the waxing and waning nature of depression symptoms by citing only to treatment notes where the claimant was stable and by omitting evidence of the claimant's subsequent periods of intense depression symptoms."). Moreover, *Arakas* holds that "ALJs may not rely on objective medical evidence (or the lack thereof) . . . to discount a claimant's subjective complaints regarding symptoms of . . . some disease *that does not produce such evidence*." *Arakas*, 983 F.3d at 97 (emphasis added). Plaintiff does not suggest that her subjective complaints relate to a disease that fails to present objective evidence of its existence. The objective medical evidence led the ALJ to find Plaintiff's PTSD, MDD, GAD, bipolar II disorder, schizoaffective disorder, and neurocognitive disorder as severe impairments and, thus, informed the ALJ's decision to include multiple mental limitations in the RFC. Tr. 1319, 1322. The ALJ based their conclusion on Plaintiff's subjective complaints, including qualifying statements regarding the extent to which she can perform activities of daily living, and on objective medical evidence in the record. *See John O. v. Kijakazi*, No. AAQ-21-1378, 2022 WL 2305255, at *5 (D. Md. June 27, 2022) (distinguishing *Arakas* and affirming the ALJ's decision where the ALJ discounted the plaintiff's subjective complaints based on objective medical evidence—rather than a lack of objective evidence); *Craig*, 76 F.3d at 595 (noting that, generally, "objective medical evidence and other objective evidence [are] crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work"). As such, I find that the ALJ properly evaluated Plaintiff's symptoms related to her mental impairments.

In the end, although a reasonable factfinder could have reached different conclusions than the ALJ did, it is not the Court's role to "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ[.]" *Collins v. Kijakazi*, No. 22-1947, 2024 WL 1405894, at *1 (4th Cir. Apr. 2, 2024) (quoting *Shelley C. v. Comm'r of Soc. Sec. Admin.*, 61 F.4th 341, 353 (4th Cir. 2023)). When faced with "conflicting evidence" that would permit "reasonable minds to differ," the Court must "defer to the ALJ's decision." *Shinaberry v. Saul*, 952 F.3d 113, 123 (4th Cir. 2020).

### V.    **CONCLUSION**

For the reasons set forth herein, Plaintiff's motion for summary judgment, ECF 8, is DENIED, and Plaintiff's alternative motion for remand, ECF 8, is DENIED. Pursuant to sentence

*Stacy S. v. Bisignano*
Civil No. 24-2613-CDA
July 30, 2025
Page 10

four of 42 U.S.C. § 405(g), the SSA's judgment is AFFIRMED.  The clerk is directed to CLOSE this case.

  Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.

          Sincerely,

          /s/

          Charles D. Austin
          United States Magistrate Judge